**CALLAHAN & BLAINE, APLC**
Richard T. Collins (Bar No. 166577)
    rcollins@callahan-law.com
Adrian L. Canzoneri (Bar No. 265168)
    acanzoneri@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for
Plaintiffs, Oumere, LLC and Wendy Ouriel

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUMERE, LLC, a Delaware limited liability company and WENDY OURIEL, an individual,<br><br>Plaintiffs<br><br>v.<br><br>CYRILLE RAYMOND LAURENT, an individual,<br><br>Defendant. | **CASE NO.: 8-20-cv-01985-JLS(ADSx)**<br><br>*Honorable Josephine L. Staton*<br><br>**PLAINTIFFS'** *EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE ISSUANCE OF PRELIMINARY INJUNCTION**<br><br>[*Filed concurrently with Memorandum of Points and Authorities; Declarations of Adrian L. Canzoneri and Wendy Ouriel; and [Proposed] Order*]<br><br>Complaint Filed: October 14, 2020 |

PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND OSC RE PRELIMINARY INJUNCTION

Plaintiffs Oumere, LLC and Wendy Ouriel (collectively "Plaintiffs") hereby apply *ex parte* to the above-captioned Court pursuant to Federal Rule Civil Procedure 65 and Local Rule 65-1 for a Temporary Restraining Order enjoining Defendant Cyrille Raymond Laurent ("Defendant") from continuing to post his defamatory content regarding Plaintiffs on Defendant's website ((http://cyrillelaurent.com/) and on his YouTube channel (https://www.youtube.com/channel/UClpumVVvG9OfDoPZeiNQNOg), and for an Order to Show Cause re Issuance of Preliminary Injunction (the "Application").

Specifically, Plaintiffs request the Court issue an order requiring Defendant to remove the defamatory video entitled "DISGRACEFUL BRANDS! OUMERE, SKINNIES, ESTHEDERM" (the "Video") from his YouTube channel – the Video is the subject of the underlying defamation lawsuit filed by Plaintiffs against Defendant.

Good cause exists to grant this *ex parte* relief because every day that the Video remains accessible for public consumption causes Plaintiffs immediate and irreparable financial and emotional harm.

Additionally, good cause exists to grant this *ex parte* relief without additional notice to Defendant because Defendant is a French citizen, currently living in France. As such, given the lengthy process of serving formal notice on a foreign citizen, *ex parte* relief without additional notice to Defendant is justified. Fed. R. Civ. Proc. 65(b). Indeed, Plaintiffs have begun the process of formally serving the Summons and Complaint on Defendant, but have been advised that the process could take 3-4 *months*. *See*, Declaration of Adrian L. Canzoneri, filed concurrently herewith, ¶ 4 ("Canzoneri Decl."). Plaintiffs' counsel did e-mail a file-stamped copy of the Complaint to Defendant on October 15, 2020, and also provided notice of this Application to Defendant via e-mail on November 24, 2020 – neither e-mail of which has Defendant responded to as of the date of this filing. Canzoneri Decl.

¶¶ 3, 5 Ex. A.  The immediate, irreparable and ongoing harm being caused to Plaintiffs as a result of Defendant's defamatory conduct mandates the *ex parte* relief sought herein.  Defendant should not be allowed to use his foreign citizenship as a shield to enable him to blatantly defame and disparage Plaintiffs.

      This application is based upon the accompanying memorandum of points and authorities, the declarations of Adrian L. Canzoneri and Wendy Ouriel, the operative Complaint, the papers, pleadings, and records on file herein, and such other and further oral and documentary evidence as may be presented at the time of hearing on this Application, if any.

Dated:  November 24, 2020

**CALLAHAN & BLAINE, APLC**

By: _____
Richard T. Collins
Adrian L. Canzoneri,
Attorneys for
Plaintiffs, Oumere, LLC and Wendy Ouriel

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant's relentless and ongoing defamatory conduct is causing Plaintiffs immediate and irreparable harm. Plaintiffs therefore respectfully apply to the Court *ex parte* for an order temporarily enjoining Defendant from continuing to publish the subject defamatory content, from continuing to intentionally interfere with Plaintiffs' current and prospective business relations, and from continuing to intentionally inflict emotional harm and distrress on Plaintiffs.

Plaintiff Oumere is an immensely popular skin care brand that uses only the most powerful, effective ingredients, and is formulated to bring skin to health. Plaintiff Ouriel began Oumere while earning a Master of Science degree in cellular biology. Through her extensive research on how to strengthen her own skin through proper formulation, her company was born. Oumere was created out of the need for skin care renaissance, for true skin care that has only the most powerful, effective ingredients, and is formulated to bring skin to health, regardless of its current state. Plaintiffs have spent considerable resources to ensure its products, services, and reputation remain high-end. In order to accomplish this challenge, Plaintiffs invest capital, time, and effort to design, test and evaluate all manufactured units. Ms. Ouriel is a published author in peer-reviewed scientific literature, and her blog, entitled *The Mask of Vanity*, is linked to the Oumere website (https://www.oumere.com/blogs/news). On the blog she offers skin care advice and information on different products to use for various skin care needs.

Defendant holds himself out to be a successful lifestyle influencer that reviews skin care products via his website (http://cyrillelaurent.com/) and social medical platforms such as YouTube and Instagram. His YouTube channel, *The Power of Science for Your Face*, currently has 16.4k subscribers and his English Instagram has 13.1k followers. The members of these social media communities

appear to be actively involved in discussions, and they trust what Defendant has to say about products.

In fact, a skin care companies' success is largely based upon the loyalty of their clientele. Once those clients abandon ship, it is nearly impossible to get them back.  Defendant's ongoing defamatory conduct towards Plaintiffs' is causing Plaintiffs to lose clients, both current and potential, likely on a daily basis. Defendant's defamatory conduct has cost Plaintiffs to lose in excess of $1,000,000 in sales, and that number will continue to increase unless Defendant's defamatory and disparaging content is removed from public consumption.

For these reasons, and those discussed in further detail herein, the Court must grant Plaintiffs' Application and order the removal of Defendants' defamatory content from both his website and his YouTube channel.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs became aware of Defendant's website and YouTube channel in the latter part of 2019, because of the disparaging comments then made about Plaintiffs. On his website, Defendant made the statement:  "WHAT A FRAUD!" and below it displayed the image of Oumere's Eye Serum product.



From Defendant's website, visitors were able to click on the video button and be directed to Defendant's YouTube channel.  There, in a lengthy rant, Defendant made several additional factually false and defamatory statements regarding

- 4 -
PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND OSC RE PRELIMINARY INJUNCTION

Plaintiff Ouriel's credentials that could only have been intended to injure her and Plaintiff Oumere's reputation and to cause them significant economic damage.

Plaintiffs' prior counsel addressed Defendants' false and defamatory statements in a December 17, 2019 letter that demanded Defendant cease and desist making false statements, that Defendant make a public retraction of his defamatory statements, and that Defendant provide a full written accounting including the name of the publication and/or platform of all the statements Defendant had made to date relating to Plaintiffs. The letter also demanded removal of all offending material. Defendant partially complied by removing the initial video and blog post.

However, despite being demanded to cease and desist, on or about July 21, 2020, Defendant posted another video entitled "DISGRACEFUL BRANDS! OUMERE, SKINNIES, ESTHEDERM" (the "Video") on his YouTube channel.



Defendant begins the Video by stating that Oumere's description of its product formula is intended to deceive the consumer into believing it is from mother nature and therefore better for the skin, which he states, "is absolutely not the case."

At three minutes into the Video, Defendant reminds his audience of the prior defamatory video and blog post that he admittedly had to remove as a result of receiving correspondence from Plaintiffs' prior counsel, and then doubles down by stating that the Oumere products are formulated without any science and that Plaintiff Ouriel claims to be a biologist, which Defendant alleges, "she uses it to

1 manipulate you and tells lies [sic] about skincare ingredient."

2 At four minutes into the Video, Defendant discusses Plaintiff Ouriel's well-
3 written blog, stating that it sounds very "sciencey," which he proclaims is very
4 dangerous and falsely states that Plaintiff Ouriel's blog posts are linked to articles
5 having "bibliographic links that make no sense and are not relevant to the article,"
6 concluding that Ms. Ouriel is "unethical."

7 On or about September 22, 2020, Plaintiffs' prior counsel again sent a letter to
8 Defendant requesting the removal of the Video, a cease and desist from making any
9 false statements of facts regarding plaintiffs, requesting a public retraction of his
10 defamatory statements, and a written accounting of all the statements he has made to
11 date about Plaintiffs on all platforms. Defendant has not compiled with these
12 requests.

13 As a result, Plaintiffs filed the underlying Complaint [Dkt. No. 1], attached as
14 **Exhibit A** to the Declaration of Adrian L. Canzoneri filed concurrently herewith
15 ("Canzoneri Decl.")]. The Complaint asserts the following causes of action against
16 Defendant: (1) Defamation; (2) Intentional Infliction of Emotional Distress; (3)
17 Intentional Interference with Contractual Relations; and (4) Intentional Interference
18 with Prospective Economic Relations. *See generally*, Dkt. No. 1.

19 Plaintiffs are in the process of effectuating formal service of the Summons
20 and Complaint on Defendant at his residence in France. Canzoneri Decl. ¶ 4. This
21 is a lengthy process given Defendant's foreign residence. In fact, Plaintiffs have
22 been advised that the process could take 3-4 months. *Id*. However, Plaintiffs'
23 counsel did e-mail a courtesy copy of the file-stamped Complaint to Defendant on
24 October 15, 2020. *Id*. at ¶ 3. Plaintiffs' counsel also provided notice to Defendant
25 of the instant Application via e-mail on November 24, 2020. Defendant has not
26 responded to either of Plaintiffs' counsel's emails. *Id*. at ¶ 5, Ex. B.

27 Given the immediacy and irreparable harm being caused to Plaintiffs daily by

- 6 -
PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND OSC RE PRELIMINARY INJUNCTION

Defendant's defamatory content remaining open to public consumption, Plaintiffs are forced to seek this *ex parte* relief. Providing additional notice of this *ex parte* application should be excused for the reasons described above, *i.e.* the lengthy process of effectuating formal service on a French citizen. However, in addition to the November 24, 2020 email providing notice of this Application to Defendant, Plaintiffs' counsel will also be e-mailing a courtesy copy of this Application to Defendant once filed. Canzoneri Decl. ¶ 7.

## III. LEGAL ARGUMENT

### A. Plaintiffs are Entitled to Immediate Injunctive Relief Against Defendant

Plaintiffs fully understand and appreciate that *ex parte* relief is limited to rare situations – particularly *ex parte* relief seeking a temporary restraining order. Plaintiffs understand that an applicant seeking *ex parte* injunctive relief must allege "specific facts in an affidavit or a verified complaint clearly show ***that immediate and irreparable injury, loss, or damage will result*** to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65 (emphasis added). "It is the plaintiff's burden to show that, in the absence of a preliminary injunction, he is likely to suffer irreparable harm." *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages. *See Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Because intangible injuries generally lack an adequate legal remedy, "intangible injuries [may] qualify as irreparable harm." *Id*. Here, as discussed in detail herein, Plaintiffs sufficiently meet their burden justifying *ex parte* relief.

Additionally, Plaintiffs are entitled to a temporary restraining order and preliminary injunction[1] if it can demonstrate (1) it is likely to succeed on the merits,

---

[1] The standard for granting a temporary restraining order is the same as

(2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in favor of the party requesting the preliminary relief, and (4) an injunction is in the public interest. *See Toyo Tire Holdings of Ams. Inc. v. Cont'l. Tire N. A., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Natural Res. Def Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365,374, 172 L. Ed. 2d 249 (2008)).

Here, Plaintiffs request that the Court grant a temporary restraining order without requiring additional notice to Defendant because there is no reasonable alternative in seeking to halt the immediate and irreparable harm being caused to Plaintiffs daily as a result of Defendant's Video and related defamatory content. Indeed, these extraordinary circumstances -- *e.g.* Defendant being a French citizen -- justify immediate injunctive relief without further notice. Defendant's decisions to continue to wholly ignore communications from Plaintiffs and their counsel regarding this matter further justify the excusal of the requirement of additional notice being provided to Defendant in advance of filing this Application.

It is indisputable that Defendant's Video and related online content is defamatory and is interfering with Plaintiffs' business relations, both current and prospective. It is also indisputable that Defendant's defamatory conduct is causing Plaintiff immediate and irreparable harm daily, including severe mental and emotional distress. *See*, Declaration of Wendy Ouriel ¶¶ 11-22. If Defendant is allowed to continue to publish the subject Video and additional defamatory content, Plaintiffs will continue to suffer immediate and irreparable harm.

Therefore, and for the reasons demonstrated below, Plaintiffs' Application should be granted.

---

preliminary injunction. *See Lavan v. City of Los Angeles*, 2011 WL 1533070, *1 (C.D. Cal. 2011) ("an application for a temporary restraining order must satisfy the same legal standard governing the issuance of a preliminary injunction").

### B. Plaintiffs Are Likely To Succeed On Their Claims against Defendant

#### 1. Plaintiffs Are Likely To Succeed on Their Defamation Claim

California law defines defamation to include libel (written defamation) and slander (oral defamation). Cal. Civ. Code §§ 45-46. To state a claim for defamation in California, Plaintiffs must allege (1) a publication that is (2) false, (3) unprivileged, and that (4) has a natural tendency to injure or that causes special damage. *Cummins v. Lollar*, 2013 WL 12123771 at *4 (C.D. Cal. April 30, 2013) (citing *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). Written publication is defined as "a communication to a third person who understands the defamatory meaning of the statement and its application to the person to whom the reference is made." *Smith v. Maldonado*, 72 Cal. App.4th 637, 645 (1999).

A defamatory statement is one that "exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. A publication is defamation *per se* when its defamatory meaning is clear on its face, but a statement that requires introduction of extrinsic evidence to evince its defamatory meaning is not. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1010 (9th Cir. 2001).

Here, Defendant caused to be published false and unprivileged communications tending directly to injury Plaintiffs and their general, occupational, trade, business and professional reputations and pursuits. On or about July 21, 2020, Defendant published false statements on his YouTube channel, including that Ms. Ouriel uses her education to manipulate and tell lies. This is patently false. *See*, Complaint ¶¶ 12-15; Ouriel Decl. ¶¶ 7-20. Furthermore, Defendant states that Ms. Ouriel is unethical. Also false. *Id*.

These statements on their face and by implication convey to any reasonable

person that Defendant knows more about the Oumere brand than Plaintiffs. These statements reflect directly and negatively on Plaintiffs' general, occupational, trade, business, and professional reputations and pursuits.

Additionally, the foregoing statements are slanderous *per se* in that they tend to injure Plaintiffs in their office, profession, trade or business by imputing on it a general disqualification in those respects that the occupation peculiarly requires and they have a natural tendency to lessen the profits of Plaintiffs' business – and which did in fact lessen the profits of Plaintiffs' business. Ouriel Decl. ¶¶ 21-22 (attesting to Plaintiffs losing in excess of $1,000,000 as a result of Defendant's conduct).

Defendant's false statements charged Ms. Ouriel with improper and immoral conduct, and dishonesty. The statements further attack Plaintiffs' knowledge of the ingredients in her own carefully crafted skin care line, all of which are intended by Defendant to make Ms. Ouriel appear incompetent and to make Defendant appear superior by direct comparison.

Quite the contrary, as stated in Ms. Ouriel's declaration. She is an experienced biologist with a master's degree. *Id*. at ¶ 2. She is a published author. *Id*. at ¶ 5. She created Oumere around her extensive scientific research, investigation and observations, and based upon her own extensive background and qualifications in the field! *Id*. at ¶ 20. She is immensely proud of her work and devoted to helping people achieve their skin care goals. *Id*.

Defendant's statements described above were made and published fraudulently through intentional misrepresentation and deceit. Defendant published the statements described above intentionally, willfully, and with full knowledge of the true state of facts with the intent to injure Plaintiffs and their general, occupational, trade, business, and professional reputations and pursuits. Defendant made these false statements deliberately and they were more than a mere statement of opinion. Additionally, Defendant made and published the statements described

- 10 -

PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND OSC RE PRELIMINARY INJUNCTION

above with malice, fraud and in conscious disregard for Plaintiffs' rights, and the statements were motivated by ill will towards Plaintiff, and with wanton disregard of Defendant's civil obligations toward Plaintiffs, with a desire or disposition to injure Plaintiffs founded upon hatred, spite, ill will or other improper motive, and which were excessively published for an improper purpose and without an honest belief in their truth.

As a result of Defendant's defamatory conduct, Plaintiffs have suffered and continue to suffer losses in clients and earnings, and have suffered and continue to suffer embarrassment, disparagement and loss to their reputation. Ouriel Decl. ¶¶ 21-22.  In addition, Defendant's conduct has caused Plaintiff Wendy Oumere significant mental and emotional distress.  *Id*. at 22.

For the foregoing reasons, there can be no dispute that Plaintiffs are likely to succeed on their defamation claim.

## 2. Plaintiffs Are Likely To Succeed on Their Claim for Intentional Infliction of Emotional Distress

To prevail on their claim for intentional infliction of emotional distress, Plaintiffs must establish: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050, 95 Cal. Rptr.3d 636 (2009).  Defendant's conduct must be intended to inflict injury or "engaged in with the realization that injury will result." *Id.*

Additionally, the California Supreme Court has held that behavior may be considered "outrageous" if Defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the

recognition that the acts are likely to result in illness through mental distress. *See Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 713 (1994).

Here, Defendant undoubtedly intended to cause Plaintiff Ouriel severe emotional distress – knowing that he was in a unique position to do so. Defendant took umbrage with Plaintiff Ouriel's scientific opinion that vitamin C serums have the potential to harm the skin and as a result has decided to go on multiple lengthy, emotional rants to viciously attack me in an effort to rally hatred against me and the Oumere brand – all because she has a different viewpoint than him on skin care. It is indeed outrageous for Defendant to turn his petty disagreement into vicious, defamatory attacks on Plaintiff Ouriel and the Oumere brand. Defendant is well aware of his status in the skin care industry and knows that what he publishes will have an effect. Defendant thereby intentionally misled his thousands of viewers so as to garner disfavor among those viewers towards Plaintiffs. Defendant engages in his vicious lying campaign without any rational understanding for Plaintiffs' work, without any legitimate scientific rebuttals to Plaintiffs' research, and without any novel research of his own that would even attempt to support his false and misleading statements.

Defendant is also well aware that skin care companies rely heavily on their reputation. As such, he engaged in his smear campaign against Plaintiffs knowing his message was reaching a wide audience, and with the intent of destroying Plaintiff Ouriel's reputation as a scientist, along with destroying Oumere's business. Indeed, Oumere is a small business with little online presence. When someone searches for Oumere, Mr. Laurent's Video is one of the first things they will see – Defendant knows this.

Defendant's continued vicious slanderous and defamatory attacks are relentless, to the level of being extreme and outrageous, particular given Defendant's abuse of his position which he knows gives him power to uniquely

- 12 -

PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND OSC RE PRELIMINARY INJUNCTION

damage Plaintiffs.  *See*, *Fermino,* 7 Cal. 4th at 713.  In addition to his own conduct, he has caused Plaintiff Ouriel to receive threats in response to Defendant's hateful and defamatory conduct.  Plaintiff Ouriel has suffered severe mental and emotional distress as a result, and has experienced significant health decline.  Ouriel Decl. ¶ 22.  Plaintiff Ouriel not only fears for her company, Oumere, but for her own personal safety as a result of Defendant's ongoing conduct. *Id.*

For these reasons, Plaintiffs are likely to succeed on the merits of their intentional infliction of emotional distress claim.  Plaintiffs' Application should be granted accordingly.

### 3. Plaintiffs Are Likely To Succeed on Their Claim for Intentional Interference with Contractual Relations

To prevail on a claim for intentional interference with business or contractual relations, Plaintiffs must establish:  "a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 55 (1998) (quoting *Pacific Gas & Elec. Co. v. Bear Stearns & CO.*, 50 Cal.3d 1118, 1126.  Intentional interference with business relationships is not a specific intent tort, and therefore a defendant who acts with knowledge "that the interference is certain or substantially certain to occur" as a result of his action is liable. *Id.* at 1155.

Here, Plaintiffs are likely to establish each and every element in support of their claim for intentional interference with contractual relations.

Of course, Plaintiffs have a contractual relationship with their clients.  Their clients pay for the products and Plaintiffs provide the products.  Additionally, Defendant was fully aware that by posting the Video, Plaintiffs' clients would be extremely likely to see the Video.  Ouriel Decl. ¶¶ 17-19.  Defendant's conduct has

disrupted, and continues to disrupt Plaintiffs' business relationships with their clients. *Id*. at ¶ 19 ("I have received messages from people stating that Laurent's Video resulted in them not purchasing Oumere products."). This has caused, and continues to cause Plaintiffs damage in the form of lost revenue and income that they would have realized had Defendant's conduct not interfered with their business relations. *Id*. at ¶¶ 21-22. Defendant's conduct is undoubtedly intentional, and stems from a simple disagreement with Plaintiffs regarding Vitamin C serum. *Id*. at ¶¶ 12-18. Defendant cannot dispute *any* of the above statements, because he undoubtedly knows what he is doing, and intends to continue defaming Plaintiffs and cause them harm with no regard for the consequences.

For the foregoing reasons, Plaintiffs are likely to succeed on their claim for intentional interference with contractual relations.

### 4. Plaintiffs Are Likely To Succeed on Their Claim for Intentional Interference with Prospective Economic Relations

To prevail on their claim for intentional interference with prospective economic relations, Plaintiffs must prove: (1) the existence of an economic relationship between the plaintiff and a third party with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts by the defendant designed to disrupt the relationship; (4) actual harm to the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's actions. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153, 131 Cal. Rptr. 2d 29 (2003).

Plaintiffs are likely to succeed on this claim for the same reasons they are likely to succeed on their claim for intentional interference with contractual relations. *See*, Sec. III(B)(3), *supra*. The only difference here is that Defendant's conduct is indisputably interfering with *prospective* clients, as well as current

clients. Skin care companies rely heavily on their reputation in the industry and on the loyalty of their clientele. Ouriel Decl. ¶ 19. When people see Mr. Laurent's Video title alone, they make the decision to not purchase products from Oumere. Plaintiffs have been expressly advised of as much directly from prospective clients. *Id*. This also undoubtedly results in causing severe and substantial financial loss to Plaintiffs. *Id*.

Accordingly, and for the same reasons discussed in Sec. III(B)(3), above, Plaintiffs are likely to succeed on their claim against Defendant for intentional interference with prospective economic relations. Plaintiffs' Application should be granted as a result.

### C. Plaintiffs Will Continue to Suffer Irreparable Harm If Injunctive Relief Is Not Granted.

It is indisputable that should Defendant be allowed to continue to publish the subject defamatory content that Plaintiffs will continue to suffer irreparable harm. Specifically, Defendant's defamatory conduct has already caused Defendants' substantial and irreparable harm in the form of lost sales, lost clients (both current and prospective) and reputational harm. Skin care companies rely heavily on their reputation and good standing in the skin care community. Should Defendant be allowed to continue to disparage Plaintiffs' business operations and reputation, there is no doubt that Plaintiffs will continue to be substantially and irreparably harmed.

As such, Plaintiffs have demonstrated that they will suffer irreparable harm if injunctive relief is not granted. Ouriel Decl. ¶¶ 21-22. The Application should be granted accordingly.

### D. The Balance of Equities is Decidedly In Favor of Plaintiffs.

Defendant's flagrant defamatory statements concerning Plaintiffs are nothing more than Defendant's attempt to intentionally, willfully, and with full knowledge of the truth, injure Plaintiffs and their general, occupational, trade, business, and

- 15 -

PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND OSC RE PRELIMINARY INJUNCTION

professional reputations and pursuits. Defendant's statements were more than mere statements of opinion, and were rather made deliberately with ill intent to cause harm to Plaintiffs.

Ms. Ouriel has dedicated her life to Oumere. There is no justifiable reason that Defendant can assert that would shift the balance of equity in his favor. In fact, it is worth noting that Plaintiffs are only seeking to enjoin *illegal activity* – Defendant's defamatory conduct. Removal of the subject defamatory content will not adversely affect any of Defendant's legitimate business operations, assuming Defendant argues as much, nor will Defendant be adversely affected generally by the removal of the subject defamatory content.

In sum, the balance of equities weighs heavily in favor of Plaintiffs, further justifying the Court granting the Application.

### E. An Injunction Is In the Public Interest

Finally, an injunction is in the public interest because it would remove deliberately false and misleading statements and information made by Defendant regarding Plaintiffs. The public interest analysis requires the Court "to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011). Consumers will no longer be subject to Defendant's misleading and false information concerning Plaintiffs' safe and health skin care products.

As such, the public interest will only be served by the removal of Defendant's defamatory content. Plaintiffs' Application should be granted accordingly.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that the Court grant the Application and grant the relief requested herein.

Dated:  November 24, 2020         **CALLAHAN & BLAINE, APLC**

                                  By: _____
                                      Richard T. Collins,
                                      Adrian L. Canzoneri,
                                      Attorneys for
                                      Plaintiffs, Oumere, LLC and Wendy
                                      Ouriel